## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| LORI D. JONES, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | |
| ) | |
| WILLIS SHAW EXPRESS, INC.; BARRY HAWGOOD; ) | |
| EXXON MOBIL CORPORATION; TRAILMOBILE PARTS & ) | |
| SERVICE CORPORATION; and COMCAR INDUSTRIES, ) | |
| INC., ) | |
| ) | |
| Defendants, ) | |
| ) | 8:04CV271 |
| WILLIS SHAW EXPRESS and BARRY HAWGOOD, ) | |
| ) | ORDER |
| Third-Party Plaintiffs, ) | |
| vs. ) | |
| ) | |
| EXXON MOBIL CORPORATION; CONSOLIDATED ) | |
| METCO, INC.; and TRAILMOBILE PARTS & SERVICE ) | |
| CORPORATION, ) | |
| ) | |
| Third-Party Defendants, ) | |
| ) | |
| TRAILMOBILE PARTS & SERVICE CORPORATION, ) | |
| ) | |
| Third-Party Plaintiff, ) | |
| vs. ) | |
| ) | |
| COMCAR INDUSTRIES, INC., a Florida Corporation, ) | |
| ) | |
| Third-Party Defendant. ) | |

This matter is before the court on plaintiff's motion (Filing 125) for leave to file a Third Amended Complaint adding a prayer for punitive damages against defendants Comcar Industries, Inc. and Willis Shaw Express, Inc. Having considered the materials submitted by the parties (Filings 125, 126, 127, 139 & 140), and noting the defendants' objections, I find that the motion should be granted.

## BACKGROUND

This lawsuit was filed as the result of a motor vehicle accident which occurred on March 4, 2002 on Interstate 80 in Cass County, Nebraska. Plaintiff's Second Amended Complaint (Filing 63) alleges that defendant Hawgood was operating a semi tractor and semi-trailer ("Trailer") owned by defendants Willis Shaw Express, Inc. ("Willis Shaw") and/or Comcar Industries, Inc. ("Comcar"). Plaintiff was driving a 1996 Buick Regal, traveling westbound on Interstate 80, some distance behind the tractor and Trailer. JoAnn Kotan was driving a 1994 Toyota Camry traveling eastbound on Interstate 80.

A component part of the Trailer is a wheel axle assembly which is designed to use a synthetic fluid grease as a lubricant. Prior to the accident, the lubricant in the left rear hub assembly of the Trailer failed, increasing friction and heat within the assembly and bearings. At approximately 6:57 p.m., the wheel axle assembly became disconnected from the Trailer axle, careened westbound through the median of the Interstate, and struck Kotan's vehicle. Consequently, Kotan lost control of her vehicle, which slid through the median into the westbound lane of traffic and collided with plaintiff's vehicle, causing serious physical injuries to the plaintiff.

Plaintiff alleges that Comcar oversees the entire fleet of long haul semi-trailers owned by Willis Shaw, and Comcar was responsible for maintaining and for setting fleet maintenance schedules for the Trailer. As early as February 1999, Comcar knew or had reason to know that a significant number of wheel end assemblies on trailers lubricated with the synthetic-fluid grease manufactured by defendant Exxon Mobil were experiencing catastrophic and/or statistically significant failures in the course of highway use. Plaintiff alleges that Willis Shaw and Comcar were negligent per se in operating and/or maintaining

the Trailer.

Plaintiff resides in Lincoln, Lancaster County, Nebraska. Defendant Hawgood resides in Orlando, Florida. Willis Shaw is an Arkansas corporation doing business in the State of Nebraska. Comcar, the parent company of Willis Shaw, is a Florida Corporation with its principal place of business in Florida.[1]

## ISSUES PRESENTED

Plaintiff seeks permission to further amend the complaint to include a prayer for punitive damages against Comcar and Willis Shaw because, during discovery, plaintiff discovered information that warrants the recovery of punitive damages against these defendants. Plaintiff argues that Nebraska's choice of law provisions allow this court to apply the punitive or exemplary damage law of other states, i.e., Florida as to her claims against Comcar and Arkansas as to her claims against Willis Shaw.

Comcar and Willis Shaw contend the motion is untimely and should be denied as futile, as punitive damages are not available under Nebraska law and are not available under Arkansas law under the circumstances presented in this action.

## LEGAL ANALYSIS

### A. Standard of Review

Federal Rule of Civil Procedure 15(a) governs the amendment of pleadings and provides that leave to amend "shall be freely given when justice so requires."

---

[1]The Second Amended Complaint and the proposed Third Amended Complaint allege that Comcar is a Delaware corporation with its principal place of business in Illinois; however, Comcar's Answer to the Second Amended Complaint (Filing 67) alleges that Comcar is a Florida corporation with its principal place of business in Florida. Since plaintiff's briefs filed in support of this motion also indicate that Comcar is based in Florida, the court will assume that Comcar is, in fact, a Florida corporation with its principal place of business in Florida.

> Given the courts' liberal viewpoint towards leave to amend, it should normally be granted absent good reason for a denial.... See Thompson-El [v. Jones, 876 F.2d 66, 67 (8th Cir. 1989)]. The classic "good reasons" for rejecting an amendment are: "undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of amendment ...." Id. (citing Foman v. Davis, 371 U.S. 178 (1962)).
>
> Generally speaking, reviewing courts have found an abuse of discretion in cases where the district court denied amendments based on facts similar to those comprising the original complaint. See Bell v. Allstate Life Ins. Co., 160 F.3d 452, 454 (8th Cir. 1998) (citing Sanders v. Clemco Indus., 823 F.2d 214, 216-17 (8th Cir. 1987); Buder v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 644 F.2d 690, 694 (8th Cir. 1981)). The inclusion of a claim based on facts already known or available to both sides does not prejudice the non-moving party. See Buder, 644 F.2d at 694. A liberal amendment policy, however, is in no way an absolute right to amend. See Thompson-El, 876 F.2d. at 67. Where an amendment would likely result in the burdens of additional discovery and delay to the proceedings, a court usually does not abuse its discretion in denying leave to amend. See id. at 68 (upholding lower court's refusal of motion to amend out of concern for extra discovery requirements and attendant delay).

Popp Telcom v. American Sharecom, Inc., 210 F.3d 928, 943 (8th Cir. 2000); see also Outlook Windows P'ship v. York Int'l Corp., 112 F. Supp. 2d 877, 897-98 (D. Neb. 2000) (overruling defendant's objection to controverted issues identified in the final pretrial order, and allowing plaintiff to pursue an alternative theory of recovery not actually raised in the pleadings).

### B. Timeliness

Defendants object to the proposed amendments on grounds of timeliness. The original deadline for filing motions to amend the pleadings expired on December 15, 2004, and plaintiff timely filed an amended complaint on January 7, 2005. Defendant Trailmobile Parts & Service Corp. was subsequently allowed to file a third-party complaint against Comcar. In light of that development, plaintiff filed an unopposed motion for leave to file

-4-

a second amended complaint naming Comcar as a defendant.  The motion was granted, and the Second Amended Complaint (#63) was filed on April 18, 2005.

Defendant Hawgood and three representatives of Comcar and Willis Shaw were deposed between September 14, 2005 and October 25, 2005.  According to plaintiff, information discovered during those depositions warrants the recovery of punitive damages.  Considering the dates of the depositions, defendants argue that the motion now under consideration could and should have been filed before January 20, 2006.

A similar problem was presented in *Outlook Windows P'ship v. York Int'l Corp.*, where the plaintiff listed two controverted and unresolved issues in the final pretrial order that had not actually been raised in the pleadings, and the plaintiff had not sought leave to amend its complaint within the time prescribed by the court's scheduling order.  *See* 112 F. Supp. 2d at 897.  In that case, Judge Kopf observed that the new issues were closely related to the claims actually pled, and involved a common set of facts.  Under the circumstances, the court found that the defendants could not fairly claim to be prejudiced if the plaintiff was allowed to pursue the alternative theories of recovery.  "The inclusion of a claim based on facts already known or available to both sides does not prejudice the non-moving party."  *Id.* (citing *Popp Telcom*, 210 F.3d at 943).

Defendants generally contend they will be unfairly prejudiced by the proposed amendment because they will have to prepared a defense on an entirely new issue before the close of discovery, now set for March 1, 2006.  The facts upon which the plaintiff will rely have already been disclosed in discovery, the defendants have not identified any additional discovery that will be needed and, in any event, the discovery schedule may be

extended, if need be. For these reasons, I find that defendants' objections based on timeliness should be overruled.

### C. Futility

In the alternative, defendants contend the motion should be denied as futile, because punitive damages are not available under Nebraska law and are not available under Arkansas law under the circumstances presented in this action. Plaintiff argues that Nebraska's choice of law provisions allow the court to apply the punitive or exemplary damage law of other states, i.e., Florida as to her claims against Comcar and Arkansas as to her claims against Willis Shaw.

#### *a. Factual Basis for Punitive Damages*

The factual basis for plaintiff's motion is described in plaintiff's brief (Filing 127 at pages 9-13), as follows:

> Defendant Hawgood, employed by Willis Shaw and the driver of the tractor and trailer owned by Willis Shaw, picked up a trailer from Con Agra in Council Bluffs, Iowa. He inspected the trailer, weighed the trailer, and adjusted the wheels in Council Bluffs, Iowa. He then started his cross country trip to Utah. A wheel end assembly separated from the trailer on Interstate 80 in Nebraska. The trailer was owed by Willis Shaw, which operates in all forty-eight continental states. [T]he trailer was maintained primarily in Arkansas, Texas and Idaho....
>
> * * * *
>
> The cause of the collision was a lack of lubrication of the wheel end assembly causing its separation from the trailer. Michael Parks, Vice President of Maintenance for Defendant Comcar testified:
>
> Q. Do you know whether what caused those duals to come off was a lack of lube in the hub?
> A. I – it was a lack of lubrication. I'm not sure if the lubrication was not in the hub or it just wasn't to the outer bearing, I'm not sure which.

> Q. So you would agree that the cause of the hub coming off was a lack of lubrication?
> A. Yes, sir.

Plaintiff has alleged different conduct as to why the wheel end or outer bearing lacked lubrication.

As to Comcar, Florida is where Comcar's conduct causing Plaintiff's injuries occurred. All of the following occurred in Florida. Comcar purchased the trailer involved in the collision. Comcar promulgated the policies and procedures for its operating companies to use in inspecting wheel ends and ensuring the fill level of grease. The operating companies, such as Willis Shaw, had no authority to deviate from the Comcar policies. Months prior to Plaintiff's injuries, Comcar became aware of a significant number of wheel end failures caused by a lack of lubrication and created a campaign to attempt to fix the situation. This campaign was known as the TM-3 Campaign. Plaintiff has alleged, in part, that Comcar negligently promulgated wheel end maintenance policies and procedures, including a wheel end lubrication campaign and further negligently informed Willis Shaw how to perform the campaign. All of this occurred in Florida....

The trailer involved in this collision was operated by Willis Shaw and Willis Shaw was responsible for implementing the maintenance policies and procedures created by Comcar from its principal place of business in Arkansas. Willis Shaw had maintenance shops in Elm Springs, Arkansas, Boise, Idaho and Amarillo, Texas. Maintenance also could be performed by other shops throughout the United States operated by trucking companies owned by Comcar. Regarding the trailer involved in the collision, the TM-3 campaign was performed at the Amarillo, Texas shop in June, 2000. This shop was not primarily handling the TM-3 campaign because it did not have sufficient staff for a large campaign. The Amarillo, Texas shop failed to perform the TM-3 campaign inspection correctly. Willis Shaw's shop mechanics spent only 36 minutes running the subject trailer through the TM-3 campaign inspection. To perform it correctly, it should have taken at least 2 to 4 hours. Finally, the trailer was domiciled in Elm Springs, Arkansas, Willis Shaw's home office. The trailer had its last yearly and preventative maintenance inspection of its wheel ends at Willis Shaw 's shop in Idaho in December, 2001. Maintenance on the trailer was performed in Arkansas, Texas and Idaho, but never Nebraska....

\* \* \* \*

[T]he location of injury–Nebraska–was fortuitous. Regarding Willis Shaw, the wheel end campaign was performed in Texas and the last wheel end inspection before the collision was performed in Idaho. The locations of

those events are also fortuitous because Comcar has maintenance shops throughout the United States.

(Citations to the record omitted).

### b. Conflicts of Law

This court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332. Federal district courts, sitting in diversity, must apply the choice-of-law rules of the state in which the court sits. *Dorman v. Emerson Elec. Co.*, 23 F.3d 1354, 1358 (8th Cir.), *cert. denied*, 513 U.S. 964 (1994). In choice-of-law determinations for personal injury claims, the Nebraska Supreme Court has adopted Restatement (Second) of Conflict of Laws § 146. *Malena v. Marriott Int'l, Inc.*, 264 Neb. 759, 766, 651 N.W.2d 850, 856 (2002); *see, e.g., Bryan Mem'l Hosp. v. Allied Property & Cas. Ins. Co.*, 163 F. Supp.2d 1059, 1064 (D. Neb. 2001).

The defendants contend that Nebraska law controls the issue of punitive damages because the plaintiff's injuries occurred in Nebraska. Plaintiffs argue that the Restatement approach adopted by the Nebraska Supreme Court requires the application of Florida and Arkansas law. As a preliminary matter, "'before entangling itself in messy issues of conflict of laws a court ought to satisfy itself that there actually is a difference between the relevant laws of the different states.'" *Malena v. Marriott Int'l*, 264 Neb. at 762-63, 651 N.W.2d at 854 (quoting *Barron v. Ford Motor Co. of Canada Ltd.*, 965 F.2d 195, 197 (7th Cir. 1992)). *See also Harlan Feeders, Inc. v. Grand Labs., Inc.*, 881 F. Supp. 1400, 1404 (N.D. Iowa 1995) ("Before any choice of law need be made, there must be a 'true conflict' between the laws of the possible jurisdictions on the pertinent issue.").

***Nebraska*:** Punitive or exemplary damages are prohibited by the Constitution of the State of Nebraska. Nebraska Const. Art. VII, § 5[2]; *Braesch v. Union Ins. Co.*, 237 Neb. 44, 58, 464 N.W.2d 769, 777 (1991); *Distinctive Printing and Packaging Co. v. Cox*, 232 Neb. 846, 857, 443 N.W.2d 566, 574 (1989). "In this state, damages for torts are limited to compensation for injury actually sustained." *Wilfong v. Omaha & Council Bluffs Street Ry. Co.*, 129 Neb. 600, 262 N.W. 537, 540 (1935). "It is a fundamental rule of law in this state that punitive, vindictive, or exemplary damages are not allowed. The measure of recovery in all civil cases is compensation for the injury sustained." *Miller v. Kingsley*, 194 Neb. 123, 124, 230 N.W.2d 472, 474 (1975).

***Florida*:** Punitive damages are allowed under Florida law pursuant to Fla. Stat. §§ 768.72, which provides:

> (2) A defendant may be held liable for punitive damages only if the trier of fact, based on clear and convincing evidence, finds that the defendant

---

[2]Neb. Const. Art. VII, § 5 provides:
§ 5. Fines, penalties, and license money; allocation; use of forfeited conveyances.
 (1)  Except as provided in subsections (2) and (3) of this section, all fines, penalties, and license money arising under the general laws of the state, except fines and penalties for violation of laws prohibiting the overloading of vehicles used upon the public roads and highways of this state, shall belong and be paid over to the counties respectively where the same may be levied or imposed, and all fines, penalties, and license money arising under the rules, bylaws, or ordinances of cities, villages, precincts, or other municipal subdivision less than a county shall belong and be paid over to the same respectively. All such fines, penalties, and license money shall be appropriated exclusively to the use and support of the common schools in the respective subdivisions where the same may accrue, except that all fines and penalties for violation of laws prohibiting the overloading of vehicles used upon the public roads and highways shall be placed as follows: Seventy-five per cent in a fund for state highways and twenty-five per cent to the county general fund where the fine or penalty is paid.
 (2)  Fifty per cent of all money forfeited or seized pursuant to enforcement of the drug laws shall belong and be paid over to the counties for drug enforcement purposes as the Legislature may provide.
 (3)  Law enforcement agencies may use conveyances forfeited pursuant to enforcement of the drug laws as the Legislature may provide. Upon the sale of such conveyances, the proceeds shall be appropriated exclusively to the use and support of the common schools as provided in subsection (1) of this section.

was personally guilty of intentional misconduct or gross negligence. As used in this section, the term:

(a) "Intentional misconduct" means that the defendant had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury or damage.

(b) "Gross negligence" means that the defendant's conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct.

(3) In the case of an employer, principal, corporation, or other legal entity, punitive damages may be imposed for the conduct of an employee or agent only if the conduct of the employee or agent meets the criteria specified in subsection (2) and:

(a) The employer, principal, corporation, or other legal entity actively and knowingly participated in such conduct;

(b) The officers, directors, or managers of the employer, principal, corporation, or other legal entity knowingly condoned, ratified, or consented to such conduct; or

(c) The employer, principal, corporation, or other legal entity engaged in conduct that constituted gross negligence and that contributed to the loss, damages, or injury suffered by the claimant.

**Arkansas:**   The accident in this case occurred on March 4, 2002.  The Arkansas statutes cited by the parties apply to claims accruing after March 25, 2003.[3]  For claims accruing prior to March 25, 2003, the Supreme Court of Arkansas

has said that an award of punitive damages is justified only where the evidence indicates that the defendant acted wantonly in causing the injury or with such a conscious indifference to the consequences that

---

[3] Ark. Acts 2003, No. 649, §§ 9-14 (Ark. Code Ann. §§ 16-55-201, *et seq.* and §§ 16-114-206, 16-114-208 to 16-114-212, "The Civil Justice Reform Act of 2003") govern the procedures for awarding punitive damages and the amounts that may be awarded for claims accruing on or after March 25, 2003, the effective date of the Act.  *See* Comment to Arkansas Model Jury Instruction 2218 (Punitive Damages).

> > malice may be inferred. *Stein v. Lukas*, 308 Ark. 74, 823 S.W.2d 832 (1992); *Missouri Pacific Railroad v. Mackey*, 297 Ark. 137, 760 S.W.2d 59 (1988); *National By-Products, Inc. v. Searcy House Moving Company, Inc.*, 292 Ark. 491, 731 S.W.2d 194 (1987). In other words, in order to support this element of damages by way of punishment, it must appear that the negligent party knew, or had reason to believe, that his act of negligence was about to inflict injury, and that he continued in his course with a conscious indifference to the consequences, from which malice may be inferred. *Mackey*, 297 Ark. at 145, 760 S.W.2d at 63; *National By-Products, Inc.*, 292 Ark. at 494, 731 S.W.2d at 196. In order to warrant a submission of the question of punitive damages, there must be an element of willfulness or such reckless conduct on the part of the defendant as is equivalent thereto. *Dalrymple v. Fields*, 276 Ark. 185, 188, 633 S.W.2d 362, 364 (1982) (quoting *Hodges v. Smith*, 175 Ark. 101, 293 S.W.2d [298 S.W.] 1023 (1927)).
>
> *D'Arbonne Const. Co., Inc. v. Foster*, 354 Ark. at 308, 123 S.W.3d at 898 (2003). The Eighth Circuit Court of Appeals has recognized that the critical inquiry is to determine whether there is evidence that a party likely knew or ought to have known, in light of the surrounding circumstances, that his conduct would naturally or probably result in injury, and that he continued such conduct in reckless disregard of the consequences from which malice could be inferred. *See In re Aircraft Accident at Little Rock*, 351 F.3d 874 (8th Cir. 2003) (citing *D'Arbonne Const. Co., Inc. v. Foster*, 354 Ark. at 308, 123 S.W.3d at 898 (2003)).

*Union Pac. R.R. Co. v. Barber*, 356 Ark. 268, 296, 149 S.W.3d 325, 343, *cert. denied*, 543 U.S. 940 (2004).

### c. Restatement

Having determined that there is an actual conflict, I turn to the Restatement (Second) of Conflict of Laws § 146, which provides:

> In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

Section 6, in turn, provides:

> (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
> (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include
>     (a) the needs of the interstate and international systems,
>     (b) the relevant policies of the forum,
>     (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
>     (d) the protection of justified expectations,
>     (e) the basic policies underlying the particular field of law,
>     (f) certainty, predictability and uniformity of result, and
>     (g) ease in the determination and application of the law to be applied.

Section 145 of the Restatement further provides:

> (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
> (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>     (a) the place where the injury occurred,
>     (b) the place where the conduct causing the injury occurred,
>     (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
>     (d) the place where the relationship, if any, between the parties is centered.
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

These factors were discussed by Judge Urbom in *Fanselow v. Rice*, 213 F. Supp. 2d 1077 (D. Neb. 2002). *Fanselow v. Rice* was a diversity case arising out of a motor vehicle accident that occurred in Nebraska. The plaintiffs who were injured in the accident were Colorado residents whose car collided with a tractor-trailer operated by defendant Rice while in the course and scope of his employment with co-defendant Transport America. Rice resided in Texas at the time of the accident, but resided in Oregon when the lawsuit was filed. Transport America was incorporated under the laws of Minnesota

and its principal place of business was in Minnesota. Applying Nebraska law, Judge Urbom held that the law of Minnesota applied to the claims against the defendant Transport America, and the law of Oregon applied to the claims against the defendant Rice. In his analysis, Judge Urbom evaluated each § 6 factor, found most of them to be inconclusive, and decided the proper focal points of the choice-of-law inquiry were the relevant policies of Nebraska, Minnesota, and Oregon, as well as the basic policies underlying the law of punitive damages, in conjunction with the "contacts" outlined in § 145(2) of the Restatement. Noting that "[t]he stated purposes of punitive damages generally include (a) punishment or retribution, and (b) deterrence," the judge agreed that the only jurisdictions concerned with punitive damages were those with whom the defendants have contacts significant for choice of law purposes.'" *Id.* at 1084. Those jurisdictions included Nebraska, Minnesota and Oregon; however, it appeared to the judge that Nebraska had "little interest in applying its punitive damages laws to a case such as this, where the only connection it has with the defendants is that it was the location of the accident giving rise to the lawsuit." *Id.* at 1085.

> It seems to me ... that (1) Minnesota has an interest in punishing Transport America, and (2) both Minnesota and Oregon have an interest in deterring future wrongdoing by their respective resident defendants. It also seems to me that these interests are greater than whatever interest Nebraska may have in prohibiting punitive damages against two non-resident defendants. In short, as the plaintiffs suggest in their reply, deterring future wrongdoing by the defendants "would most benefit" their respective states of residence, while protecting two non-resident defendants against excessive financial liability provides little benefit to Nebraska or its citizens.... I am persuaded that Minnesota and Oregon have the "most significant relationship" to the accident and the parties with respect to the issue of punitive damages.

*Fanselow v. Rice*, 213 F. Supp. 2d at 1086 (footnotes and citations omitted).

-13-

I am persuaded that the same is true in the case at bar.  I agree with the plaintiff that the location of the accident–Nebraska–is merely fortuitous, given the nationwide scope of Willis Shaw's and Comcar's business operations and the nature of the equipment failure.

In Florida and Arkansas punitive damages are allowed for the purposes of (1) punishing the wrongdoer, and (2) deterring others from comparable misconduct in the future.  As in *Fanselow v. Rice*, these interests are greater than "whatever interest Nebraska may have in prohibiting punitive damages against two non-resident defendants."  Deterring future wrongdoing by Willis Shaw and Comcar would most benefit their respective states of residence.  Protecting these non-resident defendants against excessive financial liability would provide little benefit to Nebraska or its citizens.  I am persuaded that Florida and Arkansas have the "most significant relationship" to the issue of punitive damages in the context of the plaintiff's claims for negligence against Comcar and Willis Shaw.

### ORDER

For the reasons discussed above,

**IT IS ORDERED** that plaintiff's motion for leave to file a Third Amended Complaint (Filing 25) is granted.  Plaintiff shall file and serve the amended pleading forthwith.  Defendants shall respond within the time allowed by Fed. R. Civ. P. 15(a).

**DATED February 28, 2006.**

> **BY THE COURT:**
>
> **s/ F.A. Gossett**
> **United States Magistrate Judge**